JOHN K. LOWRY, plaintiff in error, *v.* CHRISTOPHER ORR *et al.*, defendants in error.

*Error to Peoria.*

The rule of law is well established, that, in cases where the verdict of the jury has been given contrary to the evidence, or where there is no evidence at all to support the verdict, the Court will interfere and relieve the party prejudiced by such finding, by the granting of a new trial.

Where there is a contrariety of evidence on both sides, and the facts and circumstances, by a fair and reasonable intendment, will warrant the inferences of the jury, the Court will reluctantly, if ever, disturb their verdict, notwithstanding it may appear to be against the strength and weight of the testimony.

Where the verdict depends upon the credibility of the witnesses, it is the peculiar province of the jury to judge of that credibility; and to attach such weight to the testimony of each, as may seem to be proper, after a due consideration of all the circumstances, arising in the particular case, such as the relationship of the witness to one or both of the parties in controversy, his supposed interest in the event of the suit, his means of knowledge in respect to the matters in dispute, his appearance upon the stand, his manner of testifying, his general character for veracity, and the like, and to find their verdict accordingly.

A deed made to defraud creditors will be binding *inter partes*, though liable to be avoided so far as it might be intended to defeat the just demands of others. Fraud vitiates all acts, and is as well cognizable in Courts of Law, as in Courts of Equity.

TRESPASS *de bonis asportatis*, brought by the plaintiff in error, against the defendants in error, in the Peoria Circuit Court, and tried before the Hon. John D. Caton and a jury, at the April term, 1842. The jury found a verdict for the defendants, whereupon the plaintiff moved for a new trial, which motion was overruled by the Court. The plaintiff brought the case into this Court by writ of error. The pleadings and evidence in the Court below are very fully set out in the Opinion of this Court.

The case was submitted on the written arguments of counsel, from which the following abstract of points and authorities is made by the Reporter.

*N. H. Purple,* for the plaintiff in error:

There is no evidence to prove the property to have belonged to Samuel Lowry. All the evidence upon this subject is contained in the testimony of Wren, Voris, Bryant and Bryson, and does not sustain the defendants' plea. The other evidence is consistent with the plaintiff's right to recover, and, taken alone, would be wholly insufficient to sustain the plea.

The weight of evidence is clearly in favor of the plaintiff.

There is no contrariety of evidence in the cause, but it is all consistent and tends to prove the same state of facts.

Admitting the goods to have been purchased by John K. Lowry, with the money or property of his father, Samuel Lowry, still he would be only the trustee of his father, and the goods could not be reached by execution.

The law is understood to be, "that a new trial will be granted notwithstanding there is evidence on both sides, if the weight of evidence is so clearly against the verdict that there is well founded reason to believe that justice has not been done." *Jackson* v. *Steinburg,* 1 Caines, 162. In this case the Court say, "the testimony is very contradictory, yet none of the witnesses appear to have been impeached." See, also, *Mumford* v. *Smith,* 1 Caines, 520; *Mann* v. *Parker,* 1 Cowen, 244; *Hammond* v. *Wadhams,* 5 Mass. 353; *Wait* v. *M'Neil,* 7 do. 261.

In the following cases, the Court refused new trials on the ground that the evidence was contradictory. *De Tonclear* v. *Shotterkirk,* 3 Johns. 170; *Douglass* v. *Toucey,* 2 Wend. 353; *Smith* v. *Hicks,* 5 do. 48; *Jackson* v. *Loomis,* 12 do. 27; *Winchell* v. *Latham,* 6 Cowen, 682.

*E. N. Powell* & *W. F. Bryan,* for the defendants in error:

Courts will reluctantly interfere to set aside a verdict and grant a new trial, where the proceedings have been regular, and no misconduct has happened in the jurors, merely because the jury may have judged mistakenly with regard to the weight of the testimony. *Wickersham* v. *The People,* 1 Scam. 128.

Nor will a Court grant a new trial when substantial justice has been done, though the law arising on the evidence would have justified a different result. *Smith* v. *Shultz*, 1 Scam. 490.

It is well settled, that in trials by jury the weight of testimony is a question to be decided by the jury exclusively, and their decision cannot be assigned for error. *Johnson* v. *Moulton*, 1 Scam. 532. And in order to warrant a new trial, it must be *flagrant*, to justify a Court in disturbing the verdict. *Ibid.*

After a trial on the merits, the reason for disturbing a judgment rendered on finding, after all the testimony has been heard, must be *strong* and *urgent* to warrant a new trial. *Eldredge* v. *Huntington*, 2 Scam. 538; *Webster* v. *Vickers*, *Ib.* 296; *Harmon* v. *Thornton*, *Ib.* 354.

Where the evidence is contradictory, making it the duty of the jury to decide upon the credibility of the witnesses, the Court will not set aside the verdict as against the weight of evidence, although it seems to preponderate against the finding of the jury. *Douglass* v. *Toucey*, 2 Wend. 352; *Swain* v. *Hall*, 2 Wills, 45; *Leigh* v. *Hodges*, 3 Scam. 18.

There must be a plain mistake of law, or fact, to justify the interposition of the Court by granting a new trial. It is not sufficient ground for a new trial, that the evidence does not strike the Court in the same point that it appears to the jury. *Griffith* v. *Willing*, 3 Binn. 317.

Though the Judge who tried the cause, inclined that the weight of evidence was with the plaintiff, yet it is no ground for awarding a new trial, that the jury have differed from him in opinion. *Campbell* v. *Sproat*, 1 Yeates, 327; *McIntire* v. *Cunningham*, *Ib.* 363.

It must be a very strong case, indeed, that would warrant the Court to grant a new trial, when the Judge, who tried the cause, is not dissatisfied with the verdict. *Cain* v. *Henderson*, 2 Binn. 108.

The authorities cited by the plaintiff do not at all militate against the case here referred to. The cases in 5 Mass. 353, and 7 Mass. 261, so far from being in favor of the plaintiff,

we conceive to be directly against him, and do not at all contravene the principles of law as repeatedly decided by this Court. The principle clearly established in these cases is, that where there is a contrariety of evidence, and the credibility of the witnesses is left to the jury, their decision will not be set aside.

The case in 2 Wend. 352, 356, sustains the defendants. The Court there say: "There was contradictory evidence as to the words spoken. This devolved upon the jury the duty of reconciling the conflicting testimony, and, in case that could not be done, of deciding upon the credibility of the witnesses. Their decision was upon a matter peculiarly within their province, and the Court ought not to review and reverse it."

The rule of law, in granting new trials in cases upon the verdict of the jury, is not based upon the ground that the evidence seems to preponderate in favor of the party applying for a new trial; but it must be decidedly so, and it is only in cases where the verdict has been given manifestly contrary to evidence, or where no evidence at all has been given to support the verdict, that a Court will grant a new trial. *Swain* v. *Hall*, 2 Wills, 45.

The only questions to be settled in this case are, "Has there been a contrariety of testimony, and was the credibility of the witnesses, and the probability of their statements left to the jury?"

*O. Peters,* on the same side:

From the authorities above referred to, this rule may be deduced, as governing Courts in granting or refusing a new trial, to wit: Where there is evidence on both sides fairly tending, or conducing to prove or disprove the point in issue, the jury are to weigh the evidence, and the Court will abide by, and sustain the verdict of the jury, whichever way it may be.

Adopting this rule as the correct one, the only question in this case would seem to be, whether there was evidence tending to prove, or fairly conducing to prove, that the property in controversy was not the property of the plaintiff, John K. Lowry, or that it was the property of Samuel Lowry. The

question was one of fraud and the jury have passed upon it; for slight reasons the Court will not disturb the verdict.

The Opinion of the Court was delivered by

YOUNG, J.   This was an action of trespass *de bonis asportatis,* commenced by the plaintiff in error, John K. Lowry, against Christopher Orr, sheriff of Peoria county, Isaac Underhill, Phinehas S. Mulford, Isaac D. McComsey, John Armstrong, and James C. Armstrong, the defendants in error, at the April term of the Peoria Circuit Court, 1841, for taking and carrying away certain goods, wares and merchandize, chattels and effects, alleged to be the property of the plaintiff, and converting and disposing of them to their own use. The declaration is in the usual form, contains but one count, and concludes with an *ad damnum* of four thousand dollars.

To this declaration the defendants, Orr, Underhill, John Armstrong, James C. Armstrong and Mulford, on the 18th day of April, 1842, filed a special plea of justification, in substance, as follows: that the goods, wares, merchandize, chattels and effects mentioned in the plaintiff's declaration, were the property of Samuel Lowry, and not the property of the plaintiff; that on the 30th day of July, 1839, Phineas S. Mulford and Isaac D. McComsey recovered a judgment against Townsend Hills, John Armstrong and the said Samuel Lowry in the Peoria Circuit Court, for the sum of $1617·35 cents; that on the 16th day of March, 1841, the said Mulford and McComsey sued out a pluries *fieri facias* execution on said judgment, against the goods and chattels, lands and tenements of the said Hills, John Armstrong and Samuel Lowry; that said execution was on the 17th day of March, 1841, delivered to the defendant, Orr, as sheriff of Peoria county to execute; that the said Orr, as such sheriff, on the 30th day of March, 1841, by virtue of said execution, seized, took and carried away, the goods, wares, merchandize, chattels, and effects, in the plaintiff's said declaration mentioned, as the property of the said Samuel Lowry, one of the defendants in in the said execution named; and that the said defendants, Underhill, Mulford, John Armstrong, and James C. Armstrong

in the taking and carrying away of the property as aforesaid, acted as the servants, and by the command of the said Orr, so being sheriff as aforesaid, &c., with the usual verification, &c. To this plea there was a replication of traverse, by the said plaintiff to the country; and issue joined by the defendants. The cause was then submitted for trial by a jury.

The defendants then produced and gave in evidence the judgment and execution referred to in their said plea; it appearing by the indorsements on said execution that it was received by the sheriff on the 17th March, 1841, and levied on the property mentioned in the declaration on the 30th March, 1841. They then called Aquilla Wren as a witness, who testified that he had known Samuel Lowry for five or six years, and that he had a family and commenced merchandizing in Peoria about the time of his first acquaintance with him; that he, witness, purchased out Lowry, Wade & Co. of Peoria and went into partnership with the plaintiff, John K. Lowry; that the plaintiff, John K. Lowry, acted as clerk; that when he, witness, wished to dissolve the partnership, he went to Samuel Lowry and negotiated with him; that he gave them $2600, and their accounts on the books of the firm, amounting to about $900, for their proportion of the proceeds of the firm; that he and Lowry bought out Lowry, Wade & Co. in March or April, 1837; that he dissolved with Lowry sometime in April, 1838, and that he gave his note for the $2600 to John K. Lowry, the plaintiff.

Francis Voris testified, that he thought Samuel Lowry seemed to attend to the business of Lowry & Co.

Thomas Bryant testified, that he had been frequently in the store of Lowry & Co.; that Samuel Lowry and John K. Lowry both acted in the store; that Samuel Lowry seemed to be the owner of the goods; and that he, Samuel Lowry, built a house in the town of Peoria.

John G. Bryson testified, that he was a clerk in the store of Wren & Lowry, and that besides Mr. Wren, Samuel Lowry and his son, John K. Lowry, had something to do with the matter.

Aquilla Wren, on his cross examination, further testified,

that the judgment on which the execution read in this suit was issued, was obtained on a note, or notes, given by Samuel Lowry for the purchase of a lot, or lots, in the town of Peoria.

The defendants then read in evidence two notes signed by Lowry & Co. the same being so signed by Samuel Lowry, and are as follows:

"Saint Louis, July 30, 1840.

On the first of March, 1841, we promise to pay to the order of H. N. Davis & Co., six hundred dollars for value received, without defalcation or discount, and with interest from maturity at the rate of ten per cent per annum.

(Signed)                              Lowry & Co."

"$768·35.                  Saint Louis, July 29, 1840.

Ninety days after date, we promise to pay to the order of H. N. Davis & Co. seven hundred and sixty eight $\frac{35}{100}$ dollars, for value received, without defalcation or discount, and with interest from maturity at the rate of ten per cent. per annum.

(Signed)                              Lowry & Co."

The defendants here rested their case.

The plaintiff then produced and read in evidence the depositions of Melancthon J. Wade, and Stephen J. Wade, which are as follows: Melancthon J. Wade deposed, that Stephen J. Wade, Townsend Hills, Melancthon J. Wade, and John K. Lowry, formerly carried on the business of merchandizing in the town of Peoria, under the firm of Lowry, Wade & Co.; that the partnership commenced about the first of May, 1835, and continued upwards of a year; that the articles of partnership were signed by Wade, Hills & Co. and John K. Lowry, as will appear by exhibit A. referred to in deponent's deposition; that deponent was one of the members of the firm; that Samuel Lowry never advanced any capital towards the business of the firm of Lowry, Wade & Co. but acted merely as their agent or clerk for a stipulated salary; that the whole capital was furnished by Wade, Hills & Co., of Cincinnati, Ohio, and was to be increased to whatever extent the same could be profitably used; that the firm of Wade, Hills & Co. was composed of Melancthon J. Wade, Stephen J. Wade, and Townsend Hills, until June 1836, when depo--

nent sold out and withdrew from the firm; deponent heard Townsend Hills say, that he had sold out the interest of Wade, Hills & Co. in the firm of Lowry, Wade & Co. in Peoria to Aquilla Wren and John K. Lowry, but does not know to whom they gave their notes for the same, and does not know in what capacity Samuel Lowry acted for the firm of Wren & Lowry; that deponent has executed a release to John K. Lowry, and has no interest in the event of this suit.

Upon a cross examination, by the defendants, the deponent further testified that he knew nothing of the age of John K. Lowry, or of his residence with his father, Samuel Lowry, and nothing concerning Samuel Lowry's indebtedness or insolvency; supposed John K. Lowry to be the real partner, and knows nothing of any understanding in relation to any interest in the firm between Samuel Lowry and John K. Lowry, if any such existed. That Townsend Hills was a member of the firm of Lowry, Wade & Co. until deponent withdrew in 1836; that Hills might have been in Peoria while he was a member of the firm, but does not know that such was the fact; deponent was never in Peoria, and supposes Hills would know at least as much as himself about the business of the firm; knows of no understanding with Samuel Lowry, either by the firm of Lowry, Wade & Co. or John K. Lowry, otherwise than is expressed in the articles of partnership. None of the capital was furnished by John K. Lowry; deponent knew but little of the affairs of the firm of Lowry, Wade & Co. or how they were conducted at Peoria, never having been there during the existence of the firm. Cannot say what control or management Samuel Lowry had, or exercised, in either of the firms of Lowry, Wade & Co. or Wren & Lowry, at Peoria, otherwise than as agent under the articles of partnership; except that deponent saw a writing after he had withdrawn from the firm, authorizing Samuel Lowry to continue to act for the firm of Lowry, Wade & Co., which is referred to, and set forth as exhibit B. in deponent's deposition.

Stephen J. Wade deposed, that he knew the firm in Peoria, composed of John K. Lowry, Melancthon J. Wade, Stephen J. Wade and Townsend Hills; it commenced business in

May, 1835, and continued until the spring of 1837; that Melancthon J. Wade sold his interest in said firm to deponent, in June, 1836; that he was acquainted with Samuel Lowry, of Peoria; that he, Samuel Lowry, acted as agent and clerk for the firm of Lowry, Wade & Co., but had no interest in it as a partner; the capital was furnished by Wade, Hills & Co., of Cincinnati; that the firm of Wade, Hills & Co. was composed of Melancthon J. Wade, Stephen J. Wade, and Townsend Hills; that Melancthon J. Wade sold his interest in said firms to deponent, in June, 1836; and that in January, 1837, deponent also purchased out the interest of Townsend Hills, when the concern of Wade, Hills & Co. was closed; that Townsend Hills sold the interest of deponent as his attorney, in the firm of Lowry, Wade & Co. to Aquilla Wren and John K. Lowry, who gave their notes for the same; the notes were dated April 8, 1837. That Samuel Lowry did not, to his knowledge, act as a partner, either in the firm of Lowry, Wade & Co. or Wren & Lowry; that he acted as agent or clerk for Lowry, Wade & Co., and received a stipulated salary; but deponent does not know whether he acted as clerk for Wren & Lowry or not. That deponent has executed a release to John K. Lowry, and has no interest in the event of this suit.

On being cross examined by the defendants, the deponent further testified, that he thought John K. Lowry was under the age of twenty one years during the whole continuance of the firm of Lowry, Wade & Co,; presumes he resided with his father, Samuel Lowry, but cannot say. Believes Samuel Lowry was indebted and insolvent during the existence of said firm; considered John K. Lowry, the real as well as ostensible partner in said firm; and thinks the name of John K. Lowry was not used as a cover for Samuel Lowry; says that Townsend Hills was at Peoria in the spring of 1837, closing up the business of said concern; believes he was there once before; thinks his opportunities for knowing the operations of the firm were as good, but not better than those of deponent; that John K. Lowry furnished no part of the capital, and was not the owner of any property, to the knowledge of

deponent.   Deponent was not present at the sale of the stock by Lowry, Wade & Co. to Wren & Lowry; presumes that Wren and Samuel Lowry made the arrangement; thinks Samuel Lowry was not the real purchaser; and as to his using the name of John K. Lowry for the purpose of protecting his interests in the firm of Wren & Lowry, deponent has no knowledge.   That deponent has no particular information of the management of the business of Lowry, Wade & Co., or Wren & Lowry, by John K. Lowry, but supposes him to have acted as partners generally do; the principal reliance of the firm of Lowry, Wade & Co. was upon Samuel Lowry as their agent.

, By the articles of partnership between Wade, Hills & Co., of Cincinnati, and John K. Lowry, referred to in the deposition of Melancthon J. Wade, as exhibit A., and dated the 1st of May, 1835, it was agreed, among other things, that they would employ Samuel Lowry as their agent, with authority to use the name of Lowry, Wade & Co:, for the purpose of said business, but for no other purpose whatever, with a salary of $350 per annum for his services, as long as the firm should continue.   Besides this stipulation in the articles of partnership, Wade, Hills & Co. and John K. Lowry also executed to Samuel Lowry a power of attorney, authorizing him to attend generally to the business of the said firm; to sign and seal any bond, note, or other obligation appertaining to said business; to collect all debts due to said firm, and to pay all debts due from it to others; and generally to act as agent in buying, selling, and disposing of goods, wares and merchandize, as merchants.   This power of attorney was dated August 24, 1836, and is referred to in the deposition of Melancthon J. Wade, as exhibit B.

The plaintiff also offered and read in evidence to the jury, the following contracts and agreements in writing, to wit:

1.   The dissolution of partnership between Stephen J. Wade and John K. Lowry, dated May 24, 1837.

2. · The article of partnership between Aquilla Wren and John K. Lowry, dated April 8, 1837.

3.   The power of attorney from Wren & Lowry to Samuel Lowry, dated April 8, 1837.

4. The power of attorney from John K. Lowry to Samuel Lowry, dated October 18, 1838, and

5. The dissolution of partnership between Aquilla Wren and John K. Lowry, dated March 26, 1838.

The dissolution of the partnership between Wade, Hills & Co., of Cincinnati, and John K. Lowry, was as follows:

"The copartnership heretofore existing between Wade, Hills & Co., of Cincinnati, and John K. Lowry, of Peoria, under the firm of Lowry, Wade & Co., is this day dissolved by mutual consent. Samuel Lowry is duly authorized to settle the affairs of the concern, and to use the name of the late firm for that purpose; and finally, to divide the profits equally between Stephen J. Wade and John K. Lowry, dated May 24, 1837."

The powers of attorney abovementioned as having been executed to Samuel Lowry, by the firm of Wren & Lowry, on the 8th of April, 1837, and by John K. Lowry, on the 18th of October, 1838, confer precisely the same authority on Samuel Lowry, in relation to their business respectively, as the power of attorney executed to him by Lowry, Wade & Co., on the 24th of August, 1836.

The plaintiff then read, in evidence, the deed of trust from John K. Lowry to Andrew Gray and Norman H. Purple, containing an assignment of all his real and personal estate, rights, credits, &c., in trust, for the benefit of his creditors, dated April 6, 1841.

The plaintiff then introduced Samuel Lowry as a witness, who testified that Christopher Orr, one of the defendants, took the goods of John K. Lowry, from the store of John K. Lowry, to the amount in value of $1807·35, to satisfy an execution against John Armstrong, Samuel Lowry, the witness, and Townsend Hills; that no portion of the said goods belonged to him, the said Samuel Lowry, and that he had not at any time an interest in said goods; that he was never a partner of John K. Lowry, nor in any way interested as a partner in any of the firms of Lowry, Wade & Co., Wren & Lowry, or Lowry & Co.; and that he never acted in any other manner than as agent, and received a compensation for

his services as such agent. That Wade, Hills & Co. furnished all the capital of the firm of Lowry, Wade & Co.; that upon the dissolution of said firm, Aquilla Wren purchased their interest, and agreed to take their place in the firm, he, the said Wren, furnishing no money to put into the concern. That John K. Lowry furnished all the capital of the firm of Lowry & Co.; that John K. Lowry was indebted to various individuals for the goods purchased, and that the consideration of the judgment on which said execution issued, and for the satisfaction of which said goods were taken, was not for any debt of the said John K. Lowry.

The said Samuel Lowry further testified, on cross examination, that he was only a clerk in the store of Lowry, Wade & Co., and received a salary of $350 per annum; that John K. Lowry, at the time of the formation of the partnership of Lowry, Wade & Co. was a minor and continued under age during the continuance of the firm of Lowry, Wade & Co., Wren & Lowry, and part of the time during the existence of the firm of Lowry & Co.; that he, Samuel Lowry, had a wife and six or seven children, and that John K. Lowry was his son. That the salary allowed by the firm of Lowry, Wade & Co., and Wren & Lowry was not sufficient to support his family; that his expenses would amount to about $1000 per annum; that when he wanted any money for the purpose of his family, or other expenses, he took it, and charged it to himself, in his several accounts with the firms of Lowry, Wade & Co., Wren & Lowry, and Lowry & Co. respectively; that he kept no accounts individually with John K. Lowry, but took what money and goods he desired, and made himself debtor on the books of each of the said firms, for the respective amounts so by him appropriated to his use. That the firm of Lowry & Co. consisted of John K. Lowry alone; that the reason why the name of Lowry & Co. was used, was, that when John K. Lowry commenced business, he contemplated having some person in partnership with him, and had his sign painted "Lowry & Co," in reference to that contingency.

This was the substance of all the material testimony given on the trial of the cause.

The Court, at the request of the plaintiff's counsel, then instructed the jury as follows:

1.  That if the jury believe from the evidence, that John K. Lowry was the owner of the property in question at the time the same was taken by the defendants, they must find for the plaintiff the value of the property, and such damages as they believe he has sustained.

2.  That if they believe from the evidence, that John K. Lowry, at the time he was one of the partners of the firms of Lowry, Wade & Co., Wren & Lowry, or Lowry & Co., was a minor under the age of twenty one years, that this fact would not preclude him from being the owner of personal property independent of his father; and that if they believe from the evidence, that Samuel Lowry, the father, was not the owner, and that John K. Lowry was the owner of the said property in dispute, they must find a verdict for the plaintiff for the value of the property taken, and such damages as they believe he has sustained.

3.  That if they believe from the evidence, that Samuel Lowry and John K. Lowry were partners, and jointly interested in the property taken in execution by the defendants, at the time the same was taken, that, in that case the law would be, that the execution should be levied, and the undivided interest of Samuel Lowry alone sold, and the purchaser would thereby become a joint owner with John K. Lowry, and that if, in such case, the whole property should be seized and sold, the said John K. Lowry could maintain this action of trespass against the defendants, and recover the value of his interest in the same, and damages.

4.  That the pleadings in this case admit the possession of the property in question to have been in John K. Lowry, the plaintiff, and that the defendants took the property and carried it away; and also that such possession is presumptive evidence of ownership in the plaintiff.

The Court then instructed the jury at the request of the

defendants' counsel, that the jury are the peculiar judges of the credibility of the witnesses, and in determining this, they may take into consideration, their manner of testifying, their appearance on the stand, and the probability of their statements.

The jury found a verdict in favor of the defendants, when the plaintiff's counsel moved for a new trial for the following reasons, to wit:

*First*, That the verdict of the jury was against the evidence, and

*Second*, That the verdict was against law, and the instructions of the court.

At the October term 1842, of the Peoria Circuit Court, the Court overruled the plaintiff's said motion for a new trial, and rendered judgment in favor of the defendants for costs.

The following are assigned as causes of error, in this Court, to wit:

*First*, That the Circuit Court erred in overruling the motion for a new trial, because the verdict of the jury was against evidence; and

*Second*, Because said verdict was against law, and the instructions of the Court.

The only question presented by the proceedings in the the Court below, for the consideration of this Court, is in relation to the correctness of the decision of the Circuit Court in overruling the plaintiff's motion for a new trial.

It is contended that the verdict is against the evidence, as well as against the law, and the instructions of the Court. The rule of law is well established, that, in cases where the verdict of the jury has been given contrary to the evidence, or where there is no evidence at all to support the verdict, the Court will interfere and relieve the party prejudiced by such finding, by the granting of a new trial. But where there is a contrariety of evidence on both sides, and the facts and circumstances, by a fair and reasonable intendment, will warrant the inferences of the jury, Courts will reluctantly, if ever, disturb their verdict, notwithstanding it may appear to be against the strength and weight of the testimony. So,

where the verdict depends upon the credibility of the witnesses, it is the peculiar province of the jury to judge of that credibility, to attach such weight to the testimony of each, as may seem to be proper, after a due consideration of all the circumstances, arising in the particular case; such as the relationship of the witness to one or both of the parties in controversy, his supposed interest in the event of the suit, his means of knowledge in respect to the matters in dispute, his appearance upon the stand, his manner of testifying, his general character for veracity, and the like, and to find their verdict accordingly. The evidence of Wren proves that he went into partnership with John K. Lowry, who, he says, acted as *clerk* for the firm of Wren & Lowry, and that when he wished to dissolve the partnership, he went to Samuel Lowry and negotiated with him; and Francis Voris and Thomas Bryant testified, that Samuel Lowry attended to the business, and seemed to be the owner of the goods, &c. This evidence is contradicted by the articles of partnership, and powers of attorney exhibited as testimony in the cause, as well as by the positive declarations of Samuel Lowry, who was called and examined as a witness by the plaintiff; and if the statements of the witnesses were alone to be considered, and their evidence entirely divested of the circumstances which surrounded it, we could not hesitate to admit that the weight of testimony greatly preponderated in favor of the plaintiff's cause of action. But when, on the other hand, we take into view, the unusual precaution taken in executing the various powers of attorney to Samuel Lowry; the extent of these powers, in conferring almost unlimited control over the business of each concern; that Samuel Lowry was insolvent, and could not transact business in his own name; that John K. Lowry was his son, a minor, without property, and for the most part residing with his father's family; the inadequacy of the compensation allowed to Samuel Lowry as clerk, when compared with the expenses of his family; that he took both money and goods from the stores of the different firms *ad libitum,* without rendering any account therefor to his son, John K. Lowry; that, in the mean time, he built a house in Peoria,

although insolvent, and living upon an income, which he admitted to be $650 less than was sufficient for the support of his family; and that when Wren wished to dissolve the partnership of Wren & Lowry, he negotiated alone with Samuel Lowry; we do not feel authorized to say, that the jury was not warranted in finding a verdict for the defendants.

It is said by the plaintiff's counsel, that if Samuel Lowry had brought an action of replevin against John K. Lowry, for the goods in question, that no one would pretend that he could recover, on the defendants' evidence in this cause. So we think; as, in such an action, Samuel Lowry would be estopped by his own acts from insisting upon a recovery. But when the rights of third persons are concerned, and fraud or concealment is imputed to the parties, the rule is very different. A deed made to defraud creditors, for instance, will be binding *inter partes*, and yet liable to be avoided, so far as it may be intended to defeat the just demands of others, for fraud vitiates all acts, and is as well cognizable in Courts of Law, as in Courts of Equity.

But it is also insisted, that the verdict was against the law, and the instructions of the Court. This position, we also think, is not tenable. The instructions, given at the instance of the plaintiff's counsel, were based upon a supposed state of facts, which were otherwise found by the jury; and no misconduct or prejudice having been shown to exist on the part of the jurors, and as a fair trial appears to have been had upon the merits, after a full consideration of the testimony on both sides, we are of opinion, that the Circuit Court decided correctly in overruling the motion for a new trial.

Judgment affirmed with costs.

*Judgment affirmed.*